**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **REGINA DREHER,** | : | **Civil Action No.** |
| 1101 Fairyland Road | : | |
| Lehighton, PA 18235 | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | **Complaint and Jury Demand** |
| | : | |
| **UNIVEST BANK & TRUST CO.,** | : | |
| 10 W Broad Street | : | |
| Souderton, PA 18964 | : | |
|     Defendant. | : | |

**CIVIL ACTION**

Plaintiff, Regina Dreher (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Univest Bank & Trust Co. (hereinafter "Defendant"), for violations of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Univest Bank & Trust Co. is a financial services

provider with a location and corporate headquarters at 10 W Broad Street, Souderton, PA 18964.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the ADEA, the ADA and PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on March 22, 2024, alleging age and disability discrimination as well as retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2024-05757 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated September 11, 2025.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## **MATERIAL FACTS**

## **PLAINTIFF'S EMPLOYMENT HISTORY**

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff was born in 1981.

21. On or about July 31, 2020, Defendant hired Plaintiff in the position of Mortgage Loan Processor III.

22. Plaintiff was well qualified for her position and performed well.

## **PLAINTIFF'S DISABILITIES**

23. Plaintiff has the serious medical conditions of Generalized Anxiety Disorder ("GAD") and Major Depressive Disorder ("MDD").

24. The aforementioned disabilities are considered to be disabilities under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

25. The major life activities affected by GAD and MDD include, but are not limited to, communicating and sleeping.

## **PLAINTIFF INFORMED DEFENDANT OF HER DISABILITIES AND REQUESTED A REASONABLE ACCOMMODATION**

26. In or around January 2021, Plaintiff notified Brenda Marcantuono, Processing Manager, of her GAD.

27. In or around December 2021, Plaintiff notified Human Resources via email of her disabilities after a disability survey self-disclosure request was sent out.

28. When Plaintiff notified Marcantuono that she was overwhelmed due to her disability, Marcantuono stated that Plaintiff could walk away for breaks as needed as a reasonable accommodation.

## **DEFENDANT REFUSED TO ACCOMMODATE PLAINTIFF**

29. Thereafter, Marcantuono brought up Plaintiff's disability frequently.

30. Marcantuono frequently asked Plaintiff if she was overwhelmed, or if she needed to hand off work.

31. However, when Plaintiff did ask to hand off work, Marcantuono stated that everyone else was busy and Plaintiff must do it.

## **MARCANTUONO MOCKED AND HARASSED PLAINTIFF DUE TO HER DISABILITIES**

32. On or about September 13, 2022, Marcantuono continuously nitpicked Plaintiff's work product about miniscule issues.

33. Plaintiff emailed Marcantuono that she needed to take a fifteen (15) minute break because her anxiety was heightened by Marcantuono's conduct.

34. During her break, Marcantuono texted Plaintiff approximately ten (10) times, asking Plaintiff when she would be returning to work.

35. Plaintiff reminded Marcantuono that she was suffering from severe anxiety.

36. Marcantuono proceeded to mock Plaintiff for her anxiety.

37. Plaintiff stated she would contact Human Resources regarding Marcantuono mocking her disability and harassing her while she was on break.

38. Marcantuono stated she could "go to Human Resources [about it] too," or words to that effect.

## **DEFENDANT SENT PLAINTIFF FMLA PAPERWORK WHICH SHE DID NOT REQUEST**

39. On or about September 15, 2022, Stacy Zikul, Human Resources Assistant, sent Plaintiff Family and Medical Leave Act ("FMLA") leave paperwork to fill out.

40. Plaintiff had not asked for FMLA leave paperwork.

41. Plaintiff informed Zikul, M. Theresa Foscko, Executive Vice President, Director of Human Resources, and Denise Paules, Payroll Director, via email that she did not need FMLA leave.

42. Ultimately, Foscko stated to Plaintiff via phone call that she did not need to fill out the FMLA paperwork, but ridiculed her for saying that she was going to have a stroke.

43. However, prior to this conversation, Foscko had already cut Plaintiff's work computer access and had to reinstate it.

### MARCANTUONO CONINTUED TO HARASS PLAINTIFF DUE TO HER DISABILITIES

44. Thereafter, Marcantuono regularly brought up Plaintiff's anxiety during weekly Processing Meetings and mocked her for it and her need to take breaks due to her symptoms.

45. Marcantuono did this in front of Plaintiff's coworkers during the Processing Meetings as a way to humiliate her.

46. In addition, Marcantuono yelled at her and told her that a Loan Officer did not want to work with her.

### MARCANTUONO AND LIVOLSI REFUSED TO PROVIDE PLAINTIFF WITH THE POLICIES SHE REQUESTED AND ISSUED HER DISCIPLINES IN RESPONSE

47. Further, throughout her employment with Defendant, Plaintiff asked Marcantuono and Lou LiVolsi, Regional Operations Manager, for Defendant's policies regarding certain topics of which she was unclear about.

48. When Plaintiff asked about policies, Marcantuono and LiVolsi screamed in Plaintiff's face.

49. Frequently, Marcantuono, LiVolsi and/or Foscko even issued Plaintiff verbal and written warnings for asking about policies.

## **PLAINTIFF COMPLAINED ABOUT THE DISABILITY DISCRIMINATION**

50. In or around early 2023, Plaintiff complained to Foscko via email and verbally about Marcantuono's and LiVolsi's conduct.

51. Plaintiff complained that it heightened symptoms of her GAD.

52. Foscko stated, "What do you want me to do about this?" or words to that effect.

53. Foscko did not take any actions to mitigate Marcantuono's and LiVolsi's conduct.

## **DEFENDANT TERMINATED PLAINTIFF**

54. On or around January 10, 2023, LiVolsi notified all of Defendant that he would be meeting with everyone in one-on-one meetings.

55. Shortly after, Plaintiff participated in her one-on-one call with LiVolsi.

56. Foscko was also present on the call.

57. Foscko abruptly terminated Plaintiff's employment, allegedly due to "business reasons."

58. However, Plaintiff was the top Processor at Defendant.

59. Foscko refused to provide details about Defendant's criteria for terminating Plaintiff.

60. Plaintiff was 42 years old at the time of her termination.

61. Defendant chose to terminate employees who were over forty (40) years old.

62. Yolanda Smith (52), Loan Processor II, who had been out on FMLA leave, was also terminated.

63. Several months prior, Margie Carpenter (62), Loan Processor, was also terminated.

64. Plaintiff's younger, non-disabled counterparts were not selected for termination, including Althea Stamus (38), Melissa Weil (34), Amanda Aichele (35) and Andrew Bellesfield (23), Processing Assistant.

65. Defendant discriminated against Plaintiff due to her age and disabilities in violation of the ADEA, the ADA and the PHRA.

66. Defendant retaliated against Plaintiff for complaining of disability discrimination and/or for requesting a reasonable medical accommodation in violation of the ADA and the PHRA.

67. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – AGE DISCRIMINATION
## AGE DISCRIMINATION IN EMPLOYMENT ACT

68. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

69. Plaintiff was born in 1981.

70. Plaintiff was qualified to perform the job.

71. Defendant terminated Plaintiff.

72. Defendant treated younger employees more favorably than Plaintiff.

73. Defendant had no legitimate non-discriminatory reason for its actions.

74. As a result of Defendant's unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

75. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – AGE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

76. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

77. The Plaintiff was born in 1981.

78. Plaintiff was qualified to perform the job.

79. Defendants terminated Plaintiff.

80. Defendants treated younger employees more favorably than Plaintiff.

81. Defendants had no legitimate non-discriminatory reason for their actions.

82. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

83. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

84. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

85. Plaintiff was qualified to perform the job.

86. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

87. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse

employment action.

88. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

89. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

90. The purported reason for Defendant's decision is pretextual.

91. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

92. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

93. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

94. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

95. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

96. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

97. Plaintiff was qualified to perform the job.

98. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

99. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

100. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

101. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

102. The purported reason for Defendant's decision is pretextual.

103. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

104. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

105. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

106. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

107. Plaintiff engaged in activity protected by the ADA.

108. Plaintiff requested a reasonable accommodation due to her disability to Defendant and reported disability discrimination.

109. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

110. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

    **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VI – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

111. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

112. Plaintiff engaged in activity protected by the PHRA.

113. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

114. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

    **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Regina Dreher, requests that the Court grant her the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADEA, the ADA and the PHRA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

|  |  |
|---|---|
|  | **RESPECTFULLY SUBMITTED,** |
|  | **KOLLER LAW, LLC** |
| Date: December 10, 2025 | **By:** */s/David M. Koller*<br>David M. Koller, Esquire<br>Jordan D. Santo, Esquire<br>2043 Locust Street, Suite 1B<br>Philadelphia, PA 19103<br>215-545-8917<br>davidk@kollerlawfirm.com<br>jordans@kollerlawfirm.com<br><br>*Counsel for Plaintiff* |